Tommy HILL, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–81–0134–CR.

Court of Appeals of Texas,
Amarillo.

Nov. 10, 1982.

Rehearing Denied Dec. 7, 1982.

A.W. Salyars, Lubbock, for appellant.

Warren G. Tabor, Jr., Dist. Atty., Kirk Palmer, Asst. Dist. Atty., Levelland, for appellee.

Before DODSON, COUNTISS and BOYD, JJ.

BOYD, Justice.

Appellant Tommy Hill brings this appeal of his conviction for arson. Tex.Penal Code Ann. § 28.02(a)(2). The punishment, assessed by the court, was ten years confinement in the Texas Department of Corrections, probated. He raises seventeen grounds of alleged error. For the reasons hereinafter stated we do not find reversible error and affirm the judgment of conviction.

Appellant's grounds of error may be divided into five basic contentions. Grounds one through six assert that the State failed to prove appellant, at the time of the burning of the building in question, knew it was insured, an essential element of the State's case. Grounds seven through ten argue error by the trial court in denying appellant's supplemental motion for discovery as to whether the State intended to rely upon Texas Pen.Code Ann. § 7.02 and the failure of the State to apprise appellant prior to trial as to the time, dates, places, manner and means of the alleged solicitation of the State's witnesses by appellant to burn the building in question. Grounds eleven through fourteen assert error in the admission of certain telephone call records. Ground fifteen alleges an insufficiency of evidence to corroborate the testimony of the State's accomplice witnesses Elam and

Willeby. Grounds sixteen and seventeen argue error in the admission of testimony by the State's witness Darter as to the commission of an extraneous offense.

Briefly, the State's evidence showed that on the 27th or 28th of February, 1980, Francis Lee "Buddy" Elam was hired by appellant to burn a private club in Levelland belonging to appellant and known as the Red Man Club. Elam enlisted the aid of Finis Williams and Johnny Willeby to accomplish this. On the 3rd day of March, 1980, Elam and Willeby obtained entrance to the club by removing plyboard sheets covering a window in the ladies restroom. While they were soaking the interior with gasoline from two five gallon cans the pilot light on a small gas heater ignited the gasoline. Elam and Willeby left abruptly leaving a gas can behind. Investigation of the fire by the Levelland Fire Department revealed the can and other evidence which caused them to determine the fire was of incendiary origin. A more complete recitation of pertinent facts accompanies discussion of each ground of error.

We think logical continuity first requires a discussion of appellant's grounds of error seven through ten. As stated above, the thrust of appellant's argument is that the trial court erred in failing to require the State to notify appellant prior to trial, if it intended to rely upon Tex.Pen.Code Ann. § 7.02 dealing with Criminal Responsibility for Conduct of Another and if so to inform appellant, again in advance of trial the "dates, times, places, and in each instance the manner and means, in which the State intended to attempt to prove that defendant would be criminally responsible for the conduct of another." He asserts that the failure to grant this motion in effect denied him the right to prepare and present a defense of alibi. He theorizes that, without this information it was impossible for him to determine where he was and to obtain witnesses to prove his location on the critical dates of alleged solicitation. By this denial, he argues, he was deprived of due process and a fair trial. In support of his argument he first cites those provisions of the Constitution of the United States, the Constitution of the State of Texas and the Texas Code of Criminal Procedure which state and affirm the axiomatic proposition that no citizen of the State and Country shall be deprived of life, liberty, property, privileges or immunities except by due course and process of law. We accept this proposition and agree that appellant may not be deprived of his liberty except by due process of law.

In addition to the above authorities appellant peripherally cites Tex.Code Crim.Pro. art. 21.03 which requires that everything should be stated in an indictment which is necessary to be proved. He also points out the pertinent part of the indictment in question which states:

... That Tommy Hill, who is hereinafter called defendant, on or about the 3rd day of March, A.D., 1980, and anterior to the presentment of this Indictment, in the County and State aforesaid, did then and there intentionally and knowingly start a fire in a building.

He then cites Tex.Pen.Code Ann. sec. 7.02 which provides:

§ 7.02. Criminal Responsibility for Conduct of Another

(a) A person is criminally responsible for an offense committed by the conduct of another if:

(2) acting with intent to promote or assist the commission of the offense, he solicits, directs, aids, or attempts to aid the other person to commit the offense;

...

By his failure to attack the sufficiency of the indictment on this appeal, we think appellant has acknowledged the indictment sufficient to charge him with the offense of which he was convicted. It inevitably follows that the manner of the commission of the offense is a matter of proof to be made by the State and would, of necessity, involve the trial strategy of the State and the testimony to be produced by the State. By his failure to cite Tex.Code Crim.Pro. art. 39.14 appellant has recognized that his request is outside of the purview of normal discovery and must rest on some other ba-

sis. He cites no Texas authority authorizing a request of this nature and we have been unable to find any such authority. We are, therefore, faced with the specific question as to whether the failure of the trial court to require the State to reveal to the defense a portion of expected *inculpatory* testimony under these circumstances denied the appellant's right to a fair trial mandated by the Due Process Clauses of the 5th and 14th Amendments to the United States Constitution and Article I of the Texas State Constitution.

In support of his position that this action did deprive him of due process appellant cites *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215; and *U.S. v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342. We think close analysis of the cases reveal that they do not support appellant's position. In *Brady* the rule was established that suppression by the prosecution of *evidence favorable to an accused* upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. In *Agurs,* the court in explicating the teaching of *Brady* stated that the "proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt" and in expanding upon that statement stated:

> It has been argued that the standard should focus on the impact of the undisclosed evidence on the defendant's ability to prepare for trial, rather than the materiality of the evidence as to the issue of guilt or innocence. [cite omitted] Such a standard would be unacceptable for determining the materiality of what has been generally recognized as *"Brady* Material" for two reasons. First, that standard would necessarily encompass incriminating evidence as well as exculpatory evidence, since knowledge of the prosecutor's entire case would always be useful in planning the defense. Second, such an analysis would primarily involve an analysis of the adequacy of the notice given to the defendant by the State, and it has always been the court's view that the notice component of due process refers to the charge rather than the evidentiary support for the charge.

Agurs, *supra,* 427 U.S. page 112 n. 20, 96 S.Ct. at 2401 n. 20.

We think the court's analysis of the holding in *Brady* is sound. It would therefore naturally follow that the testimony in question, being inculpatory in nature, even though it might arguably be useful in appellant's trial preparation, was not within the perimeters of evidence required to be revealed under Brady and its progeny. Appellant's grounds of error seven through ten are overruled.

We next move to consideration of grounds of error eleven through fourteen. Grounds eleven and twelve attack the admissibility of the billing record of a phone number assigned to appellant and grounds thirteen and fourteen attack the admissibility of a billing record of telephone calls on a number assigned to the Incredibles, a club owned by appellant. Both records are attacked on the basis that a proper predicate under the Texas Business Records Act, Tex. Rev.Civ.Stat. art. 3737e, was not made. Appellant argues that the record shows the call entries were made mechanically, not by a person and, therefore, no proper predicate was made.[1] To establish the predicate re-

---

1. Article 3737e, in part, reads:

Competence of record as evidence

Section I. A memorandum or record of an act, event or condition shall, insofar as relevant, be competent evidence of the occurrence of the act or event or the existence of the condition if the judge finds that:

(a) It was made in the regular course of business;

(b) It was the regular course of that business for an employee or representative of such business with personal knowledge of such

act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record;

(c) It was made at or near the time of the act, event or condition or reasonably soon thereafter.

Proof of identity and mode of preparation, lack of personal knowledge.

Section 2. The identity and mode of preparation of the memorandum on record in accordance with the provisions of paragraph one (1)

quired the State called Robert Pitts, who was the Division Service Office Manager for the General Telephone Company of the Southwest. He testified that the records or entries were made at or near the event recorded and that, although the call entries were impressed mechanically on a tape, the information was taken from the tape by an individual for the printing of the record.

The Business Records Act has been held applicable to criminal cases, *Coulter v. State*, 494 S.W.2d 876 (Tex.Cr.App. 1973), and it is to be liberally construed, *Morgan v. State*, 503 S.W.2d 770 (Tex.Cr. App.1974). In this day of increasing use of electronic equipment made necessary by the escalation of the complexities of everyday existence, to hold records such as this inadmissible simply because the original entry was made mechanically instead of by an individual would effectively emasculate the act and defeat its salutary purposes. Records of a similar nature have been held admissible in civil cases. *Voss v. Southwestern Bell Telephone Co.*, 610 S.W.2d 537 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref. n.r.e.). We think the testimony of Mr. Pitts satisfied the threshold requirements of the Act and made admissible the records in question. The fact that the initial call entry was impressed mechanically would fall within that class of matters that might be shown to affect the weight and credibility but not the admissibility of the record.

Appellant also asserts that the trial court reversibly erred in admitting the call records since there was no evidence establishing who made the calls. The predicate requirements of the Texas Business Records Act having been met, the call records themself became admissible under that exception to the hearsay rule. The weight to be given the records and the determination as to the probability of who made the calls was a question for decision by the jury in the exercise of its classic function as the trier of the facts. Appellant's grounds of error eleven through fourteen are overruled.

We next move to grounds of error sixteen and seventeen. In those grounds appellant urges error in the admission of testimony by the State's witness Bob Darter that, on or about July 28, 1980, he was assaulted by appellant. Appellant argues that this testimony constituted evidence of an inadmissible extraneous offense which inflamed and prejudiced the jury against him. The testimony in question was that on or about the above date in July, appellant, one Danny Lewis and Bob Darter were driving in appellant's pickup from the Blue Darter Club in Odessa to the Redman's Club in Andrews. During the drive, according to Darter, appellant was upset that Darter's wife Melinda had testified during the Grand Jury investigation of the fire. Danny Lewis spit on Darter, Darter hit Lewis and appellant pulled his pickup to the side of the road, got out, came around to Darter's side of the pickup and a fight then ensued during the course of which appellant "kept telling me, she shouldn't have testified."

If an assault was made because of testimony against a defendant, testimony concerning the assault is admissible. *Love v. State*, 29 S.W. 790 (Tex.Cr.App.1895). It is also admissible to show conduct by a defendant in tampering with a state's witness as a circumstance tending to show his guilt. *Wingate v. State*, 365 S.W.2d 169 (Tex.Cr. App.1963). Grounds of error sixteen and seventeen are overruled.

We next consider appellant's ground of error fifteen which asserts that the testimony of the accomplice witnesses Elam and Willeby were not adequately corroborated. There may not be a conviction upon accomplice testimony without corroborating evidence tending to connect the defendant with the offense committed. Tex. Code Crim.Pro.Ann. art. 38.14. The axio-

---

may be proved by the testimony of the entrant, custodian or other qualified witness even though he may not have personal knowledge as to the various items or contents of such memo-

randum or record. Such lack of personal knowledge may be shown to affect the weight and credibility of the memorandum on record but shall not affect its admissibility.

matic test to be applied is to eliminate from consideration the evidence of the accomplice witness and then examine the other evidence to see if it tends to connect the defendant with the offense. *Edwards v. State,* 427 S.W.2d 629 (Tex.Cr.App.1968). The corroboration need only *tend* to connect the accused with the offense charged, Art. 38.14, *supra, Sheffield v. State,* 371 S.W.2d 49 (Tex.Cr.App.1963) and make the accomplice's testimony more likely true than not. The accomplice need not be supported as to every element of the offense. *Warren v. State,* 514 S.W.2d 458 (Tex.Cr.App.1974). It has also been stated that it is not necessary that the corroborating facts or evidence should be such as to show guilt independent of the evidence of the accomplice witness but must, with some degree of cogency, tend to establish facts material and relevant which would authorize the jury to credit the testimony of the accomplice. *Haire v. State,* 118 Tex.Cr.R. 16, 39 S.W.2d 70 (1931).

With these teachings in mind, we will examine those facts and evidence which could be considered by the jury as tending to connect appellant with the offense corroborating the accomplice's testimony and justify it in its acceptance of the credibility of the accomplice testimony:

1. The testimony that although appellant had been the actual owner of the property since February 7 or 8, 1978, no insurance was taken out on the improvements until February 25, 1980.

2. The testimony that the insurance policy obtained contained no loss payable to the record lienholder.

3. The testimony of the Levelland Fire Chief and Assistant Fire Chief that the fire was incendiary in nature and was set in a manner similar to the manner in which the accomplice witnesses testified the fire was set.

4. The testimony of the Levelland fireman that a five gallon gasoline can was found in the area where the accomplice witnesses testified it was left.

5. The testimony of D.L. Willeby that he gave the accomplice witnesses two gas cans similar to the one found in the rubble of the fire.

6. The testimony of the Levelland fire chief that entry was made to the club in question in a manner similar to that testified to by the accomplice witnesses.

7. The testimony of two appraisers that the improvements were worth only $10,000 while the policy taken out by appellant insured the improvements for $70,000.

8. The testimony of Melinda Darter that, on the night of the fire appellant wanted membership cards made out at his home although this had never been done before, which resulted in the Darter's being with appellant during the time the accomplice witnesses testified the fire was set.

9. The testimony of Melinda Darter that business at the Red Man Club had been "real bad" shortly before the fire.

10. The testimony of Melinda Darter as to the discrepancies in the number and value of personal property located in the club between what was actually located there and that claimed by appellant in his loss claim to the insurance company.

11. The testimony by Debbie Ely and Ava Williams that she saw the accomplice witness Elam and appellant go to the bathroom together at the place and about the time that Elam had testified he was paid $1,300 by appellant.

12. The testimony by Alton Gayle "Butch" Nichols that he witnessed a June 2, 1980 meeting between appellant and Elam in which appellant threatened Elam in a manner similar to that testified by Elam.

13. The testimony by Brenda Bates that she witnessed the meeting on June 2, 1980 in which appellant threatened Elam.

14. The admission by appellant, albeit with an explanation, of the meeting with Elam on June 2, 1980, which was at his request.

15. The admission by appellant that, if Elam did not sign a statement before the Lubbock District Attorney different from the one previously given the police, he threatened Elam that he would "kick your butt."

16. The admission by appellant that his lawyer called and warned not to contact Elam in a sequence similar to that testified to by Elam.

17. The testimony of Bob Darter about appellant's assault on him on or about July 28, 1980 because of Melinda Darter's testimony before the Grand Jury investigating this fire.

18. The evidence about telephone calls on March 4 and March 6, 1980 from rooms at the Brass Lantern motel occupied by the accomplice witnesses to a telephone number assigned to appellant.

19. The testimony of Bob Darter that there was located in the Red Man's club a small gas heater with a pilot similar to the one the accomplice witnesses testified prematurely ignited the fire in question.

Applying the guidelines set out herein we find the testimony of the accomplice witnesses Elam and Willeby to be sufficiently corroborated. Appellant's ground fifteen is overruled.

Finally, we consider appellant's grounds of alleged error one through six. The thrust of appellant's arguments under these grounds of error is that the State failed to prove that appellant knew, at the time of the fire, that the building which was burned was insured against damage or destruction by fire. Appellant correctly asserts that proof of this fact is an essential element of the charge against him. Appellant denied that he knew the policy was in force prior to the fire. To establish this element the State must depend upon circumstantial evidence and the law of parties. In determining whether a party was acting as a principal, the trial court may look to events before, during and after the offense. Reliance may be had on the actions of the parties which show an understanding and common design to do a certain act. *Holloway v. State,* 525 S.W.2d 165 (Tex.Cr.App. 1975). In reviewing the sufficiency of circumstantial evidence, we are required to test each case by its own facts, viewing the evidence in the light most favorable to the verdict. *Earnhart v. State,* 575 S.W.2d 551, 554 (Tex.Cr.App.1979); *Ysasaga v. State,* 444 S.W.2d 305, 308 (Tex.Cr.App.1969). It is not necessary that every fact point independently and directly to the defendant's guilt. It is enough that the conclusion of guilt is warranted by the combined and cumulative force of all the incriminating circumstances. *Jones v. State,* 442 S.W.2d 698 (Tex.Cr.App.1969).

It is true, as contended by appellant, that the only two witnesses produced by the State that testified directly about the issuance of the policy, were the witnesses Goodsoe and Whitaker. Goodsoe merely testified as to the mechanics of the issuance of the policy and that, after a telephone conversation with Ms. Whitaker it was bound as of 4:45 p.m. on February 25, 1980 and the policy was mailed to Ms. Whitaker on February 26, 1980 for delivery to the owner. In her testimony Ms. Whitaker testified that appellant ordered the policy by telephone on February 25, 1980. She initially testified that "I confirmed that we were going to write the coverage February the 25th." However, she later testified that "I didn't know it would be issued that day" and that the first time that appellant had been informed that the club was covered was on the morning following the fire. She testified that the policy was paid for sometime between February 29 and March 5, 1980 but she did not know whether it was before or after the fire. Appellant testified that he paid the premium on the 4th of March.

It would only add additional length to an already lengthy opinion for this court to reiterate evidence already discussed in earlier points. Suffice it to say, that view-

ing all the testimony in a manner most favorable to the verdict, the jury would be justified in believing that appellant knew that the insurance was in force on the date of the fire. Appellant's grounds of error one through six are overruled.

There being no reversible error, the judgment of the trial court is affirmed.